# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>DOUGLAS LEE | No. 3:17-cr-65 (SRU) |

## RULING ON MOTION FOR JUDGMENT OF ACQUITTAL AND/OR FOR A NEW TRIAL (Doc. Nos. 383, 386)

Defendant Douglas Lee ("Fly") was charged by Indictment with the kidnapping of Charles Teasley ("Man"), resulting in Teasley's death, in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2 (count one); the firearm-related murder of Teasley in furtherance of kidnapping, in violation of 18 U.S.C. § 924(j)(1) and 18 U.S.C. § 2 (count two); and the firearm-related murder of Teasley in furtherance of Hobbs Act Robbery, in violation of 18 U.S.C. § 924(j)(1) and 18 U.S.C. § 2 (count three). *See* Indictment, Doc. No. 1. Lee was charged alongside co-defendants Harold Cook ("Oink"), Gerund Mickens ("Breeze"), Terrell Hunter ("Rell"), and Jesus Ashanti ("Black"). *Id*. All but Ashanti elected to go to trial and Lee's trial was severed from that of his co-defendants.[1] *See* Order on Mot. to Sever, Doc. No. 178 at 20-22.

Lee went to trial in October 2018 and was found guilty on count one, but acquitted on counts two and three. *See* Verdict, Doc. No. 392. He filed an oral Motion for Judgment of Acquittal on October 23, 2016 (doc. no. 383) and a written Motion for Judgment of Acquittal and/or New Trial on October 26, 2018. *See* Mot. for Acquittal, Doc. No. 386. On July 8, 2019, I ordered the government to show cause why Lee's Motion for Judgment of Acquittal should not

---

[1] Cook, Mickens, and Hunter were tried in August 2018 and were each found guilty on all three counts. *See* Verdict, Doc. No. 320. Subsequently, count two was dismissed on consent. Mot. to Dism., Doc. No. 462; Order, Doc. No. 464. All three defendants have filed Motions for Judgment of Acquittal and/or New Trial, which are currently pending.

be granted on the basis that the evidence failed to show that Lee knew that Teasley would be *kidnapped*, as opposed to *robbed*, which was necessary to convict him on count one. Order to Show Cause, Doc. No. 457. The government and Lee have both responded. *See* Lee Mem. in Supp., Doc. No. 463; Gov't Opp., Doc. No. 474; Lee Reply, Doc. No. 478. For the following reasons, Lee's Motion for Judgment of Acquittal is **granted**.

I. **Background**

The following general factual evidence was alleged by the government and introduced at trial. Additional facts will be set out below. On the night of January 9, 2009, Teasley received a phone call from Lee and the two set up a drug transaction where Teasley would buy cocaine from Lee. Tr. 10/16/18, Doc. No. 415 at 304, 307-08. At around 9:00 p.m., Teasley took $1,100 from his girlfriend Kim Brookens' purse and left the home he and Brookens shared in West Hartford. *Id.* at 275, 305, 310. Teasley left in his mother's car, an Acura TL, and was planning to bring his grandmother to work, get something to eat, and meet Lee for the transaction. *Id.* at 308-10. Shortly after he left the house, Brookens received a call from Teasley who asked her to bring his small safe, where he kept money and drugs, downstairs. *Id.* at 311-12. Brookens retrieved the safe and gave it to a man, not Teasley, standing at the front door, whom she described as a tall, thin, dark-skinned black man wearing all black and a black face mask who spoke with a West Indian accent. *Id.* at 315-20. While doing so, she saw the Acura TL parked on the street in front of her house. *Id.* at 317. Thereafter, Teasley did not pick up his grandmother from work, nor did he answer Brookens' multiple phone calls. *Id.* at 321, 326.

Brookens called Teasley's friends and relatives in search of him, and on January 10, 2009 reported Teasley missing to the West Hartford Police Department. Tr. 10/16/18, Doc. No. 415 at 333-36. Teasley's body was found by his friend Desmond Wright two days later, on January 12,

in the back seat of the Acura TL, parked on Colebrook Street in Hartford. Tr. 10/15/18, Doc. No. 414 at 63, 111-12. Teasley's hands were bound behind his back with zip ties and he had been shot multiple times in the head. *See* Tr. 10/15/18, Doc. No. 414 at 86, 93, 143, 236; *see also* Gov. Ex. 5K, 5U, 5W, 6B, 6I. In 2011, Ashanti, who was incarcerated for an unrelated crime, met with law enforcement and implicated himself, Cook, Mickens, Hunter, and Lee (among others) in Teasley's murder. Tr. 10/16/18, Doc. No. 415 at 524-25, 538.

On March 30, 2017, Lee, Cook, Mickens, Hunter, and Ashanti were charged in a three-count indictment with Teasley's kidnapping, robbery, and murder. *See* Indictment, Doc. No. 1. The government alleged in the indictment that Lee set up a drug deal with Teasley and when Teasley arrived at the specified location, he was ambushed by Cook, Mickens, Hunter, and Ashanti, who kidnapped Teasley by binding his hands and forcing him into the back of his car. *Id*. Cook, Mickens, Hunter, and Ashanti then assaulted Teasley, forced him to get the safe from Brookens, and murdered Teasley by shooting him in the head at close range. *Id*. I granted Lee's Motion to Sever because of the likelihood of prejudice that would arise if the government introduced prior alleged kidnappings and robberies in which Lee was not involved.[2] *See* Order on Mot. to Sever, Doc. No. 178 at 20-22. Further, Lee's degree of culpability in the instant case was "markedly different" from that of his co-defendants because the government alleged only that Lee "set Teasley up by arranging the drug transaction and providing the details to the other defendants." *Id*. at 22. The government did not allege that Lee otherwise participated when Teasley was kidnapped, robbed, and murdered. *Id*. Accordingly, Lee was tried separately from

---

[2] I later ruled that the evidence at issue regarding another kidnapping and robbery was inadmissible pursuant to Fed. R. Evid. 404(b), but denied the government's Motion for Reconsideration of my order granting Lee's Motion to Sever. *See* Order, Doc. No. 189.

3

his co-defendants and, as mentioned, was found guilty on count one only. He now moves for a judgment of acquittal.

**II.     Standard**

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29. "A defendant seeking to overturn a conviction on the ground that the evidence was insufficient bears a heavy burden." *United States v. Best*, 219 F.3d 192, 200 (2d Cir. 2000), *cert. denied*, 121 S. Ct. 1733 (2001). The reviewing court must view the evidence in the light most favorable to the prosecution and must reject the sufficiency challenge if it concludes that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also United States v. Payton*, 159 F.3d 49, 56 (2d Cir. 1998) ("The ultimate question is not whether [the court believes] the evidence adduced at trial established defendant's guilt beyond a reasonable doubt, but whether *any rational trier of fact could so find.*" (emphasis in original)). A reviewing court must consider the evidence as a whole, not in isolation. *Best*, 219 F.3d at 200; *see also United States v. Memoli*, 2015 WL 1525864, at *2 (D. Conn. Apr. 2, 2015) ("In order to prevail on a Rule 29 Motion, Defendant must establish that the *totality* of the evidence is insufficient to convict him—it is irrelevant that one piece of evidence, standing alone, would not have been enough." (emphasis in original)). The "pieces of evidence must be viewed 'not in isolation, but in conjunction.'" *Memoli*, 2015 WL 1525864, at *2 (quoting *United States v. Casamento*, 887 F.2d 1141, 1156 (2d Cir. 1989)).

Further, the court must defer to the jury's determination of the weight of the evidence, credibility of witnesses, and competing inferences that can be drawn from the evidence. *Best*,

219 F.3d at 200. The district court must "assum[e] that the jury resolved all questions of witness credibility and competing inferences in favor of the prosecution." *United States v. Abu–Jihaad*, 630 F.3d 102, 134 (2d Cir. 2010) (internal citations omitted); *see also United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998) ("We defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of competing inferences that can be drawn from the evidence."). The jury is "exclusively responsible" for determinations of witness credibility, *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993), and the court must be "careful to avoid usurping the role of the jury since Rule 29 does not provide the trial court with an opportunity to substitute its determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Cassese*, 428 F.3d 92, 98 (2d Cir. 2005) (internal quotation marks omitted). The court should defer to the jury's credibility assessments and intrude upon that function only where "exceptional circumstances can be demonstrated" such as when "testimony is patently incredible or defies physical realities." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992).

### III. Discussion

As addressed in my Order to Show Cause, the critical question with respect to count one is whether there was sufficient evidence to prove beyond a reasonable doubt that Lee had knowledge that Teasley would be kidnapped, not merely robbed. Order to Show Cause, Doc. No. 457 at 4. I conclude that the evidence did not sufficiently show that Lee knew that Teasley would be kidnapped and, therefore, Lee's Motion for Judgment of Acquittal is **granted.**

A. Legal Principles

In Count One, Lee was charged with aiding and abetting Cook, Ashanti, Mickens, and Hunter in kidnapping Teasley, which resulted in Teasley's death. The federal kidnapping statute provides, in relevant part, that a person commits kidnapping when he:

> [U]nlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person … when … the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense[.]

18 U.S.C. § 1201(a)(1). Accordingly, the government must prove beyond a reasonable doubt each of the three elements of kidnapping: (1) taking; (2) holding; and (3) interstate commerce. *See United States v. Corbett*, 750 F.3d 245, 251 (2d Cir. 2014). The aiding and abetting statute, 18 U.S.C. § 2, provides that someone can be found guilty of aiding and abetting a crime and can be punished as a principal if he: "(a) . . . aids or abets or counsels, commands or induces, or procures [an offense's] commission" or "(b) … willfully causes an act to be done which, if directly performed by him, or another would be an offense against the United States."

In order to be found guilty of a crime as an aider and abettor, "the government must prove 'that the underlying crime was committed by a person other than the defendant, that the defendant knew of the crime, and that the defendant acted with the intent to contribute to the success of the underlying crime.'" *United States v. Huezo*, 546 F.3d 174, 179 (2d Cir. 2008) (quoting *United States v. Reifler*, 446 F.3d 65, 96 (2d Cir. 2006)). Under an aiding and abetting theory of liability, the government "need not show that [the defendant] knew all of the details of the crime … so long as the evidence shows that he joined the venture, [that he] shared in it, and that his efforts contributed towards its success." *Reifler*, 446 F.3d at 96 (internal citations and quotation marks omitted). However, "[t]o prove that the defendant acted with … specific intent,

6

the government must show that he *knew of the crime*." *Id*. (emphasis added). A defendant charged with aiding and abetting must know "what kind of criminal conduct was in fact contemplated." *United States v. Gallishaw*, 428 F.2d 760, 763 n.1 (2d Cir. 1970); *see also United States v. Garguilo*, 310 F.2d 249, 253 (2d Cir. 1962) ("knowledge that a crime is being committed, even when coupled with presence at the scene, is generally not enough to constitute aiding and abetting"). Further, an aider and abettor must "actively participate[] in a criminal venture with the full knowledge of the circumstances constituting the charged offense." *Rosemond v. United States*, 572 U.S. 65, 76 (2014).

To convict Lee for the substantive crime of aiding and abetting a violation of 18 U.S.C. § 1201(a)(1), the federal kidnapping statute, the government would have to show "at a minimum" that Lee knew that Teasley was going to be kidnapped. *See Gallishaw*, 428 F.2d at 763; *see also Garguilo*, 310 F.2d at 253 (defendant must in some way "associate himself with the venture", "participate in it as in something that he wishes to bring about", and "seek by his action to make it succeed" (internal quotation marks omitted)).

B. <u>Evidence at Trial</u>

The government's case against Lee at trial relied heavily on the testimony of co-defendant and cooperating witness Jesus Ashanti, who testified as follows. Ashanti met Mickens while the two were incarcerated together and they became friends. Tr. 10/16/18, Doc. No. 415 at 440. Through Mickens, Ashanti became friends with Cook, Mickens' brother, around 2006. Tr. *Id.* at 441-43. Ashanti, Cook, Mickens, Hunter, and a man named Cinque Sutherland frequently hung out together at the "gambling house" on Enfield Street in the North End of Hartford. *Id.* at 443-44. They would sell drugs at the gambling house and would also commit robberies. *Id.* at 444-45.

7

Cook called Ashanti on the night of January 9, 2009 and told Ashanti to "come to the block" and Ashanti went to the gambling house so they could "do a robbery." Tr. 10/16/18, Doc. No. 415 at 447, 452-54, 456. Ashanti, Cook, Mickens, and Hunter were planning to rob Troy Hicks and another person while the two participated in a $70,000 drug deal. *Id.* at 456-58. When Ashanti arrived at Enfield Street, only Cook had a gun, so the group went to Oakland Terrace in Hartford to retrieve more guns from someone called "Fats." *Id.* at 457-60. Ashanti was given a 9-millimeter, Mickens a Desert Eagle, and Hunter a .380 caliber. *Id.* at 462-63. Hunter then tried to set up the robbery of Hicks, but it never happened. *Id.* at 464.

After the Hicks robbery plan was abandoned, Cook received a call and told Ashanti "Home from Blue Hills just sold his car and got 40 racks on him." Tr. 10/16/18, Doc. No. 415 at 465. Ashanti could not hear who was on the phone or what that person was saying. *Id.* at 465-66. At Cook's direction, Ashanti pulled over on a side street and another car pulled up, which Ashanti recognized as Lee's car. *Id.* at 466-67. Cook got out of Ashanti's car to talk to Lee and then Cook got back into Ashanti's car and Lee drove off. *Id.* at 467. Ashanti did not hear the conversation between Cook and Lee. Tr. 10/17/18, Doc. No. 416 at 727-28. Cook told Ashanti when he got back into the car that Teasley had sold his BMW, had $40,000, and was going to Lee's house to buy drugs. Tr. 10/16/18, Doc. No. 415 at 467-70. Ashanti, again at Cook's direction, drove to the area of Lee's house. *Id.* at 473.

When they arrived at Lee's house, Lee was "[o]n his way up the steps." *Id.* at 478-79. Ashanti did not see where Lee went after that, whether he went inside the house or went "someplace else." *Id.* at 479. Ashanti, Cook, Mickens, and Hunter then walked to Lee's driveway to wait for Teasley, with Ashanti and Mickens in the back, and Cook and Hunter in the

8

front. *Id.* at 473-74. Ashanti did not see Lee thereafter and Lee was not involved in the following events relating to Teasley's robbery, kidnapping, and murder.

Teasley then walked up the driveway, Cook and Hunter grabbed him, and Teasley put his hands up and threw down "a knot" of money, which "was [not] a lot of money." Tr. 10/16/18, Doc. No. 415 at 480-82, 485. Teasley's hands were then zip-tied behind his back and Ashanti, Cook, Mickens, and Hunter walked Teasley across the street and the five men got into the Acura TL, Teasley's car. *Id.* at 480-83. Cook drove the car to another side street where the group asked Teasley for more money. *Id.* at 484. When Teasley said he did not have any more, Cook pulled out a pocket knife and "poked [Teasley] a couple of times" through the sweatshirt on Teasley's head and Mickens smacked him in the head with a gun. *Id.* at 487. Cook then drove Teasley's car back to the area of Lee's house, and Ashanti and Mickens got out of Teasley's car and got into Ashanti's car. *Id.* at 488. The two cars pulled over in West Hartford and Cook came to Ashanti's car and told them that Teasley had $25,000 that Mickens needed to go get. *Id.* at 489-90. Mickens then went up to a house where he participated in "a little handoff" with a woman and got back into Teasley's car, driven by Cook. *Id.* at 491; Tr. 10/17/18, Doc. No. 416 at 572.

Ashanti followed Teasley's car back to the North End of Hartford and, while doing so, saw two flashes in Teasley's car that Ashanti believed to be gunshots. Tr. 10/16/18, Doc. No. 415 at 496-97. Cook pulled Teasley's car over on Colebrook Street, and Cook, Mickens, and Hunter, one of whom was carrying a little safe, got out of Teasley's car and got into Ashanti's car. *Id.* at 498, 532. Ashanti drove them to Hunter's car and then followed Hunter to a house on Mahl Avenue, also in the North End of Hartford. *Id.* at 500-01. Cook told Ashanti there was nothing in the safe. *Id.* at 502. Further, Ashanti heard Hunter say to Cook "Home was bluffing

9

… [t]hat's why after you hit him, I hit him" which Ashanti understood to mean that they shot him. *Id.* at 504. Ashanti gave Cook the gun and left, and he learned the next day that Teasley had been killed. *Id.* at 509-12.

In December 2010, Ashanti was arrested in Massachusetts for bank robbery. Tr. 10/16/18, Doc. No. 415 at 513. While he was being held at the police station, Ashanti tried to commit suicide and, when that was unsuccessful, he asked to meet with Hartford police, for whom he had been a paid informant. *Id.* at 515-19. Ashanti met with law enforcement shortly thereafter and implicated himself, Lee, Cook, Mickens, and Hunter in Teasley's murder. *Id.* at 524-25, 538; *see also* Gov. Ex. 59 (identifying Cook); Gov. Ex. 60 (Ashanti identifying Hunter); Gov. Ex. 61 (Ashanti identifying Lee); and Gov. Ex. 62 (Ashanti identifying Mickens). Ashanti also told law enforcement that Sutherland was involved in the murder and that Lee and Sutherland showed up to meet Cook together in Sutherland's car. Tr. 10/16/18, Doc. No. 415 at 522; Tr. 10/17/18, Doc. No. 416 at 564-65; *see also* Gov. Ex. 63 (Ashanti identifying Sutherland). He implicated Sutherland because Ashanti "didn't want [Sutherland] on the street" because he could find addresses and Ashanti was worried Sutherland would go after Ashanti's mother. Tr. 10/16/18, Doc. No. 415 at 522.

Thereafter, Ashanti met with members of the FBI regarding the Teasley murder. *Id.* at 543-44. He was then appointed counsel and on March 17, 2011 met with the United States Attorney's Office and signed a proffer agreement, in which he was "agreeing to work with the government and tell them everything that happened." *Id.* at 544, 547-49; *see also* Gov. Ex. 55. At that meeting, Ashanti recanted his statements that Sutherland was involved. Tr. 10/16/18, Doc. No. 415 at 549-50. He did not recant any of his statements about Lee, Cook, Mickens, or Hunter. *Id.* at 551. Ashanti was indicted in March 2017 along with Lee, Cook, Mickens, and

10

Hunter. *See* Indictment, Doc. No. 1. On July 16, 2018, Ashanti signed a cooperation agreement and plea agreement with the government and pled guilty to the three counts. *See* Gov. Ex. 54, 56.

  C. Analysis

Lee argues, inter alia, that he "had no knowledge of a kidnapping nor did he advance the same in any way" and, further, that he "was never involved in plotting the kidnapping, and his actions do not meet the elements of aiding and abetting." Mem. in Supp. Mot. for Acquittal, Doc. No. 463 at 4, 6. I agree that the evidence was insufficient to establish that Lee aided and abetted in Teasley's kidnapping.

As stated, the evidence at trial overwhelmingly established that Lee set up a drug deal with Teasley and told his co-defendants where and when it was to take place, so that they could *rob* Teasley. *See, e.g.,* Tr. 10/16/18, Doc. No. 415 at 430 (Ashanti testifying that Lee "set [the] *robbery* up" (emphasis added)); *id.* at 538 (Ashanti testifying that Lee was not "part of the *robbery* group itself") (emphasis added)); Tr. 10/17/18, Doc. No. 416 at 758 (Ashanti being asked "With regard to how these meetings or these *robberies* would be set up, if somebody provided information to the group *about a robbery* … a target, somebody that … *could be robbed* … would that person participate in some way with the proceeds?" (emphasis added)). Ashanti also testified that it was "not supposed to be a murder" but "was just going to be a *robbery*." Tr. 10/17/18, Doc. No. 416 at 750 (emphasis added). The evidence made clear that Ashanti believed the intended criminal activity was a robbery. *See* Tr. 10/16/18, Doc. No. 415 at 447, 453-54, 456 (Cook told Ashanti to "come to the block" that night so they could "do a *robbery*" (emphasis added)); *id.* at 456 (Ashanti testifying that he was not dressed for a *robbery*).

11

Regardless of the fact that the evidence suggests that Lee was intending only to set up a robbery, the government argues that Lee should have anticipated that his co-defendants would kidnap Teasley. *See* Gov. Opp., Doc. No. 474 at 25. Specifically, the government argues that Lee's co-defendants' "history of committing similar crimes including, and especially, their use of kidnapping as a tool for robbing people—and Lee's likely knowledge of this history—all provided further evidence from which the jury could have reasonably inferred that Lee knew and intended that Teasley be kidnapped." *Id*. Ashanti did testify that their group was "fairly well known" in the North End of Hartford. Tr. 10/16/18, Doc. No. 415 at 469. He specifically testified, however, that their *robberies* were well-known, and did not say anything about whether it was well-known that they committed kidnappings in connection with robberies. *Id.* (Ashanti testifying that people knew they committed "*armed robberies*" (emphasis added)); *id.* at 474 (Ashanti testifying that he, Cook, Mickens, and Hunter were armed because it was well known in the North End that "that's the way [they] did [those] *robberies*" (emphasis added)); *id.* at 481 (Ashanti testifying that when the group "did [those] *robberies*" they would wear gloves and masks) (emphasis added)).

Moreover, although Ashanti testified about prior robberies that he committed that also involved kidnapping, there was no evidence to suggest that Lee was aware of that. *See* Tr. 10/17/18, Doc. No. 416 at 617-26 (Ashanti testifying about robberies he'd done with Cook sometimes also with a kidnapping component); *id.* at 626 (Ashanti testifying that during the time he was committing those other robberies, he did not have any relationship with Lee). In fact, Ashanti affirmatively testified that Lee had *never* participated in any other robberies, nor any other crime, with Ashanti, Cook, Mickens, and Hunter. *Id.* at 626-27, 726. Moreover, Ashanti testified that he did not even know that Cook and Lee knew each other until the night of

12

Teasley's robbery, despite the fact that Ashanti and Cook were "very tight" and were together "just about every day." *Id.* at 678-79. The evidence showed, then, that Lee did not have a strong criminal connection to Ashanti, Cook, Mickens, and Hunter, and, therefore, was not necessarily on notice that sometimes the group would commit kidnappings alongside robberies. In addition, even if it was well-known in Hartford's North End that this group would commit robberies via kidnapping, a community's "general knowledge" about the co-defendants' reputation cannot, without some evidence Lee was aware of that reputation, be imputed to Lee for purposes of finding knowledge beyond a reasonable doubt. Moreover, as aforementioned, the only thing that Ashanti testified was "well known" about their robberies was that he and the others were armed while doing so. Tr. 10/16/18, Doc. No. 415 at 469, 481.

There was simply no evidence to suggest that, at the time of Lee's involvement, the group planned anything more than a robbery. Ashanti affirmatively testified that Lee was not present when the robbery Lee set up became a kidnapping, and Ashanti did not know where Lee went before Teasley arrived. *Id.* at 479 (Ashanti testifying that he did not see where Lee went when Ashanti, Cook, Mickens, and Hunter arrived); Tr. 10/17/18, Doc. No. 416 at 736-37 (Ashanti testifying that he could not see where Lee went); *id.* at 739 (Ashanti testifying that he has said "in various forms … that Lee walked away from the house" after Ashanti, Cook, Mickens, and Hunter showed up). Simply put, Lee was not "part of the robbery group itself" and "did not participate in the actual physical grabbing and kidnapping" or the zip-tying of Teasley, but only "set[] this thing up and set[] things in motion." Tr. 10/16/18, Doc. No. 415 at 539. Further, Lee "was not present when Teasley was restrained" and had "no involvement at all" other than planning to sell cocaine to Teasley. Tr. 10/17/18, Doc. No. 416 at 666.

13

The government argues that Lee should have known that his co-defendants intended to kidnap Teasley because they brought zipties to Lee's house. Even if it would be reasonable to assume that knowledge of the zipties amounted to knowledge of a plan to kidnap, there was no evidence that *Lee* knew that his co-defendants had zipties with them. Moreover, the government argues that the defendants were intending to rob Teasley of the proceeds of his car sale, which were in the tens of thousands of dollars, and Lee could not possibly have thought Teasley would bring that much money to a drug deal.[3] Accordingly, the government argues, Lee must have known that there was going to be some action taken by his co-defendants, likely a kidnapping, in order to secure the additional money. Gov. Opp., Doc. No. 474 at 20. In making that argument, however, the government resorts to impermissible speculation. *See United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019) ("Impermissible speculation … is 'a complete absence of probative facts to support the conclusion reached.'" (quoting *Lavender v. Kurn*, 327 F.3d 435, 448 (2d Cir. 1999)). The jury had no evidence from which to infer that (1) Lee should have known that his co-defendants would seek to secure additional money from Teasley, or (2) even if Lee should have known they would seek more money, that his co-defendants would resort to kidnapping to do so, or (3) that Lee wished to bring about the kidnapping. Although a jury's "reasonable inferences" are entitled to deference, its "impermissible speculation" is not. *Id*.

There was simply no evidence—direct or indirect—that Lee "knew of" the kidnapping, nor that he "acted with the intent to contribute to the success" of the kidnapping. *Huezo*, 546 F.3d at 179; *see also Reifler*, 446 F.3d at 96. Further, there was no evidence that Lee "actively participated" in the kidnapping "with the full knowledge of [its] circumstances[.]" *Rosemond*, 572 U.S. at 76. The evidence showed that Lee set Teasley up to be robbed and then he left; and

---

[3] There was evidence that Cook thought Teasley would bring that much money to the drug deal. Ashanti testified that Cook told Ashanti that Teasley had $40,000 "on him." Tr. 10/16/18, Doc. No. 415 at 465, 468.

14

what happened next was beyond both his knowledge and his control. Even viewing the evidence in the light most favorable to the government, as I must, no rational jury could have found, beyond a reasonable doubt, that Lee aided and abetted his co-defendants in Teasley's kidnapping and eventual murder. Lee has met the "heavy burden" of showing that the evidence is insufficient to sustain his conviction on count one. *See Best*, 219 F.3d at 200. Accordingly, Lee is entitled to a judgment of acquittal.

IV.     **Conditional Ruling on Motion for New Trial**

Pursuant to Rule 29(d)(1) of the Federal Rules of Criminal Procedure, I must issue a conditional ruling on Lee's Motion for a New Trial. Fed. R. Crim. P. 29(d)(1). For the following reasons, Lee's Motion for a New Trial is conditionally **denied**.

Lee argues that he is entitled to a new trial because Ashanti's testimony was incredible on its face and replete with inconsistent statements. *See* Mem. of Law Mot. for New Trial, Doc. No. 463 at 20-43. "It is the province of the jury and not of the court to determine whether a witness who may have been inaccurate, contradictory, and even untruthful in some respects was nonetheless entirely credible in the essentials of his testimony." *United States v. O'Connor*, 650 F.3d 839, 855 (2d Cir. 2011) (internal quotation marks omitted). Lee's counsel strenuously cross-examined Ashanti about his various inconsistent statements to law enforcement, Ashanti's history of untruthfulness, as well as any incentive he may have had to testify falsely at Lee's trial. The jury was entitled to take all of Ashanti's testimony into consideration when determining whether to find him credible, *Best*, 219 F.3d at 200, and I defer to its determination. *Strauss*, 999 F.2d at 696.

In the event that the judgment of acquittal is reversed, there was nothing about Lee's trial, specifically Ashanti's credibility, that needs to be addressed in a new trial. Ashanti did not,

because he could not, testify that Lee had knowledge of Teasley's kidnapping. That was the fundamental flaw with the government's evidence against Lee, and, therefore, the "manifest injustice" that Lee has suffered. *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). To the extent the Second Circuit disagrees with my grant of the judgment of acquittal, and Lee's knowledge of the kidnapping is no longer an issue, a new trial is not warranted. Accordingly, Lee's Motion for a New Trial is conditionally denied.

## V.     Conclusion

For the foregoing reasons, Lee's Motions for Judgment of Acquittal (Doc. Nos. 383, 386) are **granted**. Lee shall be immediately released from custody.

So ordered.

Dated at Bridgeport, Connecticut, this 6th day of September 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge